UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

═══════════════════════════════════

UNITED STATES OF AMERICA,

                    Plaintiff,

        v.                                          **DECISION AND ORDER**
                                                    11-CR-151-A & 11-CR-366-A

EFRAIN HIDALGO,

                    Defendant.

═══════════════════════════════════


Defendant Efrain Hidalgo, a/k/a Cheko, has filed a second *pro se* motion (Dkt.

No. 1120)[1] for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i), as amended

by the First Step Act of 2018, and requests a sentence of time served (*see* Dkt. No.

1132, p. 15) or some lesser reduction (*see* Dkt. No. 1120, p. 73).  The Government

filed a response in opposition (Dkt. No. 1125) and a supplement to its response (Dkt.

No. 1128), and the U.S. Probation Office submitted a memorandum in opposition.

Defendant also filed a reply (Dkt. No. 1132).  For the following reasons, Defendant's

motion for a sentence reduction under the compassionate release statute is

DENIED.

---

[1] Defendant's motion for compassionate release was filed on the docket in case number
11-CR-151-A, only.  References herein, unless otherwise indicated, are to items filed in
11-CR-151-A.  Because Defendant seeks relief from his total sentence of 330 months,
imposed during a single sentencing proceeding in both 11-CR-151-A and 11-CR-366-A,
the Court is filing this Decision and Order on both dockets.

## BACKGROUND

On February 26, 2015,[2] Defendant pleaded guilty to Count 1 of the Superseding Indictment in 11-CR-151 (Dkt. No. 87), charging him with a violation of 18 U.S.C. §§ 1962(d) and 1963(a) (RICO conspiracy).  He also pleaded guilty to a violation of 18 U.S.C. § 924(c)(1)(A)(iii), discharge of a firearm during and in relation to a crime of violence and a drug trafficking crime, as a lesser included offense of Count 2 of the Superseding Indictment in 11-CR-366 (Dkt. No. 68).  *See* Dkt. No. 561 (plea agreement).  In pleading to the lesser included offense in 11-CR-366, Defendant no longer faced the enhanced sentence that would have resulted had he pleaded guilty to Count 2 as charged, as such count included a sentencing enhancement for causing the death of another under 18 U.S.C. §§ 924(j)(1) and 2.

In taking his plea, Defendant admitted in relation to Count 1 of 11-CR-151 that between 2000 and 2012, he was a member/associate of Cheko's Crew/7th Street Gang operating on the West Side of the City of Buffalo, New York, and he was engaged in this enterprise to conduct multiple acts of murder; robbery; and conspiracy to distribute controlled substances, to include heroin, cocaine base, and marijuana.  In addition to his involvement in extensive drug trafficking (the relevant conduct being the equivalent of at least 1,000 but less than 3,000 kilograms of marijuana), Defendant also admitted that as a part of this violent gang, he personally participated in four different murders and seven different attempted murders.

---

[2] The change-of-plea proceeding commenced on February 25, 2015, and continued the following day.  *See* Dkt. Nos 990 (Plea Tr.) & 991 (Plea Tr., Cont'd).

With respect to Count 2 of 11-CR-366, Defendant admitted that on November 11, 2004, "while aiding and abetting and being aided and abetted by Misael Montalvo, Brandon Jonas, and other unindicted co-conspirators, discharged a firearm during a conspiracy and attempt [sic] to forcibly steal property and extort assets from Nelson and Miguel Camacho.  The discharge of the firearm by Brandon Jonas during a robbery attempt, in which the defendant was a participant, caused the death of Nelson Camacho, as charged in Count 2 of the Superseding Indictment.  Dkt. No. 561, ¶ 5n.  As admitted by Defendant in his written plea agreement, both Nelson and Miguel Camacho were shot and killed during this incident, in which Defendant was armed with a baseball bat and Jonas was armed with an AK-47 style machine gun.  Dkt. No. 561, ¶ 5k.

At Defendant's sentencing on August 17, 2016, the Court calculated that with a Total Offense Level ("TOL") of 43 and a Criminal History Category of III, his advisory United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") range was life on Count 1 in 11-CR-151, plus 10 years on Count 2 in 11-CR-366 due to the consecutive statutory minimum term of imprisonment for that count of conviction.  Upon granting the Government's 8-level downward departure motion pursuant to U.S.S.G. § 5K1.1, Defendant's TOL became 35 and his range of imprisonment for Count 1 was reduced to 210 to 262 months.  The Court sentenced Defendant to the low-end of that recalculated range: a term of 210 months as to Count 1 in 11-CR-151, and a consecutive 120 months as to Count 2 in 11-CR-366, for a total term of 330 months of imprisonment.  Dkt. No. 857 (judgment).

In Defendant's first motion for compassionate release filed in January 2024, he argued that a purported change in the law amounted to an "extraordinary and compelling" reason justifying a reduction of his sentence, and additionally that his youth at the time of the offense, his rehabilitation, and his health warranted a sentence reduction.  This Court rejected those arguments in a Decision and Order (Dkt. No. 1107) docketed in March 2024, which is incorporated herein by reference.

On January 21, 2026, Defendant filed the instant compassionate release motion, in which he asserts that his (a) withdrawal from gang-related activity while incarcerated; (b) rehabilitation; (c) length of time he has presently served; (d) medical concerns that he argues are not being properly treated in the Federal Bureau of Prisons ("BOP"); and (e) youth at the time of the offense, along with "documented lifelong trauma" and "untreated psychological injuries" stemming from his dysfunctional upbringing, constitute extraordinary and compelling reasons for his early release from incarceration.  Defendant is 39 years old and currently incarcerated at Federal Correctional Institution, Butner Medium I, in Butner, North Carolina ("FCI Butner"), with a projected release date of March 1, 2035.[3]

## **DISCUSSION**

"The First Step Act's 'compassionate release' provision, 18 U.S.C. § 3582(c)(1)(A), provides an exception to the general rule that a court may not modify a term of imprisonment after it has been imposed."  *United States v. Luke*, No. 14-

---

[3] *See Inmate Locator: Register Number 37524-069*, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Apr. 22, 2026); *see also* Dkt. No. 1125-4 (Ex. D, Gov't Opp.), p. 2 (noting same projected release date accounting for good time credit).

4

CR-06089-FPG, 2024 U.S. Dist. LEXIS 72005, *3 (W.D.N.Y. Apr. 19, 2024) (internal

citation omitted), *aff'd*, 24-1141, 2025 U.S. App. LEXIS 5477 (2d Cir. Mar. 10, 2025)

(summary order).  Under this provision, a court may reduce the term of

imprisonment if, "after considering the factors set forth in section 3553(a)," it finds

that "extraordinary and compelling reasons warrant such a reduction…and that such

a reduction is consistent with applicable policy statements issued by the Sentencing

Commission."  18 U.S.C. § 3582(c)(1)(A)(i) (alterations omitted); *see United States*

*v. Keitt*, 21 F.4th 67, 73 (2d Cir. 2021) (per curiam).  It is a defendant's burden to

show he or she is entitled to a sentence reduction under § 18 U.S.C. 3582(c)(1)(A).

*See United States v. Jones*, 17 F.4th 371, 375 (2d Cir. 2021) (per curiam).

Given the Government's concession that Defendant "has satisfied the

exhaustion requirement" for filing the instant motion (Dkt. No. 1128; *see* Dkt. No.

1128-1 [denial by Warden at FCI Butner, dated October 27, 2025]), the Court will

consider the motion on the merits.  *See United States v. Saladino*, 7 F.4th 120, 121

(2d Cir. 2021) (per curiam) (holding the § 3582(c)(1)(A) exhaustion requirement "is a

claim-processing rule that may be waived or forfeited by the government").

## I.      Extraordinary and Compelling Circumstances

A defendant "must demonstrate that his proffered circumstances are indeed

'extraordinary and compelling' such that…a sentence reduction…would not simply

constitute second-guessing of the sentence previously imposed."  *Keitt*, 21 F.4th at

71.  Congress expressly delegated authority to the Sentencing Commission to

"describe what should be considered extraordinary and compelling reasons for

sentence reduction, including the criteria to be applied and a list of specific

5

examples."  28 U.S.C. § 994(t).  Guideline § 1B1.13(b) sets forth the Sentencing Commission's policy statements regarding "extraordinary and compelling reasons" that warrant a sentence reduction.

To start, Defendant's primary argument is that his decision to drop out of a gang he was associated with constitutes an extraordinary and compelling reason for a sentence reduction.  He explains that because he was not an active member of the gang, he was unable to secure any documentation from the National Gang Unit verifying his drop-out status.  Even so, according to Defendant, he has been housed exclusively at BOP facilities (ones he names) with "gang drop-out" yards since 2017, which he asserts should serve as proof of his status.  He argues this designation is due to ongoing danger he faces: "[o]nce an inmate is identified as a drop-out and placed in these specialized yards, he can never again safely walk a general population yard."  Defendant further argues he has experienced harsher-than-typical incarceration from the "unique risks he faces as a verified gang drop-out inmate."

Assuming the truth of Defendant's representations that he has renounced any gang affiliation,[4] the Court disagrees that Defendant's gang renunciation is an extraordinary and compelling reason for a sentence reduction.  Instead, the Court will consider this as a factor when evaluating Defendant's purported rehabilitation. The Court recently made such a finding with respect to a motion for compassionate

---

[4] The Government argues Defendant has not submitted any evidence to support this allegation, and investigators at FCI Butner have confirmed to BOP counsel that there is no record of information regarding his gang affiliation or denunciation.  *See* Dkt. No. 1125, p. 5 n.2 ("[T]here are no BOP records to support the defendant's claim that he is a verified prison gang member, or that he has participated in any gang drop process.").

release filed by co-defendant Esteban Ramos-Cruz.  *See United States v. Ramos-Cruz*, 11-CR-151-RJA, 2026 U.S. Dist. LEXIS 34248, *17 (W.D.N.Y. Feb. 19, 2026) ("The Court is unaware…of any Second Circuit authority that recognizes gang disassociation as a standalone extraordinary and compelling circumstance that is 'similar in gravity,' Guideline § 1B1.13(b)(5), to the circumstances outlined in Guideline § 1B1.13(b)(1)-(4).  Rather, district courts in this Circuit have simply considered participation in such a program as part of defendants' total rehabilitation efforts.") (collecting cases).

Defendant also argues that his youth at the time of the offense conduct and his dysfunctional upbringing compel a reduced sentence.  In rejecting this same argument made in his first motion for compassionate release, the Court held that while "[y]outh at the time of the offense can contribute to a finding of extraordinary and compelling circumstances…, particularly where the crimes were 'split-second' and 'hot-headed,'" Defendant's over decade-long participation in the violent street gang did not support such a finding: he was an adult when the murders and attempted murders began, and that activity "continued for years."  Dkt. No. 1107, p. 10.  The Court further explained:

> Defendant's acts of violence were planned and often in retaliation for acts of violence directed toward members of Defendant's gang.  While the circumstances of defendant's youth are, unquestionably, tragic, and such fact can also contribute to a finding of extraordinary and compelling circumstances…, this Court was aware of Defendant's youth and upbringing at the time of sentencing and took them into account in imposing the sentence it did.  (Dkt. No. 992, pp. 19-20).

Dkt. No. 1107, pp. 10-11.

7

Indeed, the Court was highly aware of these circumstances when sentencing Defendant.  At Defendant's sentencing hearing, Defense counsel spoke about Defendant's background and childhood at length, and how Defendant was "young when this worst violence was going on," *i.e.*, about 18 years old through 23 years old.  Dkt. No. 992, pp. 9-12.  Other commentary concerning Defendant's youth and upbringing were made throughout the hearing.  *See* Dkt. No. 992, pp. 21-22, 24, 26, 30.  The Court indicated that it had read a psychosocial report prepared by a mitigation specialist concerning Defendant's traumatic upbringing,[5] and adopted the presentence investigation report, which detailed some of this information.  *See* Dkt. No. 992, p. 3; Dkt. No. 1082 (revised PSR), ¶¶ 177-183.

Moreover, this Court likewise rejected Ramos-Cruz's assertion that—given his age of 22 years old at the time of the shooting death of Eric Morrow (one of the four murders Defendant participated in) and his upbringing that left him more vulnerable to negative peer influences—he had presented circumstances that were extraordinary and compelling.  *See Ramos-Cruz*, 2026 U.S. Dist. LEXIS 34248, at *11-16.

As to his physical condition, Defendant argues that a work-related injury sustained in the BOP on November 22, 2024, is an extraordinary and compelling circumstance warranting his early release.  He argues that the BOP's conservative treatment of this injury and limited capacity to properly monitor and continue to treat

---

[5] Defendant references this report in his motion papers (*see* Dkt. No. 1120, pp. 12-13).  The report was a sealed attachment to Defendant's sentencing memorandum and is in the record at Docket Number 849.

this condition, particularly considering his autoimmune history, presents long-term risks of harm and "unreasonable medical hardship" should his confinement continue.

The Court has carefully reviewed the medical records obtained by the parties from the BOP (Dkt. No. 1120, pp. 28-51 [Ex. C, Def's Mtn.]; Dkt. No. 1125-2, [Ex. B., Gov't Opp.]), which confirms that Defendant experienced and reported a fall on November 22, 2024, as he had misstepped and the right side of his body landed on a trash compacter.  Following his initial complaints of bruising pain on his right ribcage area and right knee, and denials of difficulty breathing (Dkt. No. 1125-2, pp. 17-18), Defendant for weeks afterward complained of "intense pain" in his right ribcage area when lying on his right side, twisting or turning, sneezing, coughing, and deep breathing (Dkt. No. 1125-2, pp. 5-16).  X-rays taken of his right ribs on December 6, 2024, revealed "[n]ondisplaced right posterior lateral 9th and 10th rib fractures."  Dkt. No. 1125-2, p. 117.

The BOP engaged in "conservative treatment approaches" to Defendant's injury.  Dkt. No. 1125-2, p. 8.  Medical personnel provided him with an abdominal binder "to support ribcage during breathing," and an incentive spirometer with which to practice deep breathing.  Dkt. No. 1125-2, pp. 6-7, 12.  They also recommended over-the-counter medications, *i.e.*, Naproxen and Tylenol, for pain management, but Defendant declined those medications "citing possible drug interaction with his HLA B 27 history."  Dkt. No. 1125-2, p. 11.  He was further advised to "avoid any aggravating activity…as it could take up [to] 3 months for his ribs to heal."  Dkt. No. 1125-2, p. 6.  On January 3, 2025, Defendant was seen in the physical therapy department and rated his pain as a 7 or 8 out of 10, stating he had been unable to

9

exercise at all given the pain.  Defendant's injury was assessed as follows: "The pt's pain should improve as the fractures heal.  Doing anything strenuous to include cardio at this time will make the pain worse and therefore, should be avoided.  Pt can return to prior level of activity once the pain goes away.  Pt should not need any skilled Rehab."  Dkt. No. 1125-2, pp. 3-4.

In the records from January through December 2025, supplied by the Government, there is only minimal mention made of Defendant's rib fractures.  *See* Dkt. No. 1125-2, pp. 112 (1/10/2025 note that "[a]t present, chest pain from his rib fracture is the only complaint he has"), 144 (10/8/2025 note that Defendant "[c]ontinues to have pain in right ribs *if he does certain types of sit-ups*") (emphasis added).  The bulk of these records instead address ongoing issues with Defendant's eyes that the Court was already aware of, as well as issues with inflammation and stiffness/immobilization in his joints and spine.  *See* Dkt. No. 1082 (revised PSR), ¶ 184 (noting past diagnosis of "uveitis (inflammation of eye)" and "current[ ]…vision problems due to this diagnosis"); Dkt. No. 992, p. 17 (defense counsel mentioning Defendant's "medical issue…with his eyesight"); *see also* Dkt. No. 1125-2, pp. 72-78 (list of health problems), 193-199 (same).  Many of these problems are potentially related to Defendant testing positive for HLA-B27, a "protein that is found on the surface of white blood cells"; a positive test for HLA-B27 "suggests a greater-than-average risk for developing or having certain autoimmune disorders."[6]  Defendant

---

[6] *HLA-B27 antigen*, UCSF HEALTH, https://www.ucsfhealth.org/care/medical-tests/hla-b27-antigen (last visited Apr. 22, 2026). HLA-B27 is a gene that is "strongly associated with a big family of rheumatic diseases called spondyloarthropathies…[which] mainly cause pain, stiffness and inflammation in the spine, hip joints and entheses – places

has consulted with a rheumatologist and optometrist, and received treatment in the form of routine screenings, steroid eyedrops, and prescribed medications.

In short, on this record, it appears that the BOP is adequately treating and monitoring Defendant's medical conditions.  Defendant has not demonstrated that he is suffering from a "serious physical or medical condition…that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility" (U.S.S.G. § 1B1.13(b)(1)(B)), or that he is a "suffering from a medical condition that requires long-term or specialized medical care that is not being provided" (U.S.S.G. § 1B1.13(b)(1)(C)).

Together with his youth/upbringing argument, Defendant argues that the deterioration of his mental health stemming from trauma "directly tied to his history of abuse and institutional failure," falls under U.S.S.G. § 1B1.13(b)(1)(C), as a condition for which the BOP is not providing proper treatment.  There is nothing in Defendant's recent medical history to indicate he is suffering from mental health issues that necessitate treatment.  Furthermore, as of October 2025, his mental health care level was "CARE1-MH."  Dkt. No. 1125-4, p. 2.  According to the BOP, the Care Level 1 designation describes inmates who "are generally healthy" and who "may have chronic medical conditions that can easily be managed by clinician

---

where ligaments and tendons attach to bones.  HLA-B27 is also common in people who have…the eye inflammation uveitis.  The greatest association, though, is with ankylosing spondylitis (AS), a type of axial spondyloarthritis that attacks the low back and spine."  Linda Rath, *The Link Between HLA-B27 and Arthritis*, ARTHRITIS FOUNDATION, https://www.arthritis.org/diseases/more-about/hla-b27-gene-and-arthritis (last visited Apr. 22, 2026).

evaluations every 6-12 months[.]"[7]  The Court recognizes, as it has on previous occasions, that Defendant had a very challenging upbringing marked by traumatic events.  While it is possible that he is suffering from symptoms the BOP has not documented, upon this record, Defendant has not shown that (a) his mental health has deteriorated, (b) the BOP has been made aware of this deterioration but has not effectively addressed it, and (c) that such situation is extraordinary or compelling.

Last, the Court finds that Defendant's rehabilitation while in BOP custody does not constitute an extraordinary and compelling reason for a reduction in his sentence when combined with other reasons asserted by him.

To be sure, Defendant has made sustained efforts to rehabilitate himself, through employment, attaining his GED in 2018, the completion of numerous educational programs, and his asserted denunciation of gang affiliations.  *See* Dkt. No. 1125-4 (Individualized Needs Plan); Dkt. No. 1120, pp. 26-27 (same); Dkt. No. 1120, pp. 52-71, 76 (certificates of completion and achievement, GED transcript, and Unicor Work Performance Evaluation Record).  Defendant has submitted strong letters of support from family members, friends, fellow inmates, his Unicor supervisor, and a prison volunteer (Dkt. No. 1120, pp. 81-92; Dkt. No. 1132, pp. 21-24), as well as two compelling letters to the Court (Dkt. No. 1120, pp. 72-74; Dkt. No. 1132, pp. 18-20) expressing his remorse, years of self-reflection, and desire to

---

[7] *Care Level Classification for Medical and Mental Health Conditions or Disabilities (2025)*, Federal Bureau of Prisons, https://www.bop.gov/resources/health_care_mngmt.jsp (last visited Apr. 22, 2026).

move forward with his life in a positive way—divorced from his prior criminal affiliations.[8]

Defendant claimed in his initial motion papers that he has maintained a "spotless disciplinary record" in the BOP (Dkt. No. 1120, pp. 5, 16).  In opposition, the Government attached a copy of Defendant's disciplinary report (Dkt. No. 1125-3), showing a total of four disciplinary violations: insolence to BOP staff in 2015, assault with serious injury and possessing a dangerous weapon in 2017, disposing of an item during a search or attempt to search in 2020, and using another inmate's phone account in 2023.  The Court will not consider the 2015 violation or the 2015 "general incident report" from Niagara County Jail proffered by the Government, as they both predate Defendant's sentencing and therefore offer little to no weight in the Court's current evaluation of Defendant.[9]  The remaining three violations were sustained over a period of over 9 ½ years, and the 2020 and 2023 incidents appear relatively minor.  Regarding the assault in 2017, which is obviously the most alarming, Defendant argues that he became involved in a "serious physical

---

[8] Defendant also submitted a purported list of community members who support his release.  *See* Dkt. No. 1132, pp. 25-32.  These names were presumably obtained upon solicitation in a petition posted on change.org, portions of which appear to have been copied and included in Defendant's initial motion papers.  *See* Dkt. No. 1120, pp. 77-80.

[9] The Government asserts that the 2015 "general incident report" shows that Defendant not only served as a "gang leader in the streets," but he also "exerted considerable influence over other inmates in jail" according to guards at the Niagara County Jail.

The Government also points out Defendant's PATTERN score from his last program review: "High risk recidivism."  Dkt. No. 1125-4, p. 3.  The Court does not place much weight in this score, as it has conducted an independent analysis of Defendant's rehabilitation efforts and the § 3553(a) factors.

altercation" when he was targeted for his cooperation.  All told, while Defendant's disciplinary record is not "spotless," the Court does not view it as highly concerning or as proof that Defendant has not attempted to rehabilitate himself.

Although Defendant has provided robust evidence of his rehabilitation efforts, rehabilitation is "not, *by itself*, an extraordinary and compelling reason" for a sentence reduction.  U.S.S.G. § 1B1.13(d) (emphasis added), citing 28 U.S.C. § 994(t).  Rather, it may only be "considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted."  U.S.S.G. § 1B1.13(d).  Having found Defendant's other circumstances are not extraordinary or compelling, the Court concludes he has not met his burden of establishing such circumstances.

## II.      18 U.S.C. § 3553(a) Factors

Even if Defendant had demonstrated an extraordinary and compelling reason for a sentence reduction, the Court would nonetheless conclude that a reduction is unwarranted upon its assessment of the 18 U.S.C. § 3553(a) factors.

The Court commented at sentencing that Defendant would have been serving a life sentence had he proceeded to trial and been convicted, and had he not cooperated with the Government.  Dkt. No. 992, p. 18.  Defendant received an 8-level reduction for his cooperation, which he certainly "earned," having testified at Montalvo's sentencing hearing in 11-CR-366, and having helped to exonerate an innocent man who served 10 years in state prison for the murders of Nelson and Miguel Camacho.  Dkt. No. 992, p. 18.  In sentencing Defendant at the low-end of the Guidelines range, this Court commented that it imposed such sentence "under

14

all the circumstances," including Defendant's "very significant" cooperation.  Dkt. No.

992, pp. 34-35.  It also remarked on the "very, very bad and difficult situation that

existed for many, many years on the West Side of Buffalo" that Defendant's criminal

activities contributed to.  Dkt. No. 992, p. 36; see Dkt. No. 992, pp. 19-20.

Moreover, as the Court stated in denying Defendant's first motion for

compassionate release:

> Consideration of [the § 3553(a) factors] militate against
> any [ ] reduction of Defendant's sentence…Defendant was
> complicit in the murders of four individuals and the
> attempted murder of seven other individuals.  He was a
> member of a violent street gang that was essentially at
> war with a rival gang.  *See*, *United States v. Delgado*, 972
> F.3d 63, 67-70 (2d Cir. 2020), as amended (Sept. 1,
> 2020).  He and his fellow gang members put large
> quantities of heroin, cocaine, and other drugs into
> circulation and acquired firearms for other gang members
> to use.  Dkt. No. 1082, 12-19.  A very significant sentence
> is necessary to reflect the seriousness of the offense;
> provide just punishment; promote respect for the law;
> provide deterrence[;] and protect the public from further
> crimes.  In short, if there were extraordinary and
> compelling circumstances, the § 3553(a) factors would, at
> this time, significantly outweigh them.

Dkt. No. 1107, pp. 11-12.

The Court maintains the view that Defendant's sentence of 330 months'

imprisonment remains sufficient but not greater than necessary to fulfill the purposes

of sentencing.  Defendant has clearly made progress in custody.  Among other

things, Defendant has completed numerous educational programs, has supportive

family members and friends, has not incurred any new disciplinary infractions, and

expresses his remorse and intent for self-improvement.  Even so, these factors do

not sufficiently mitigate against—to the extent that a reduction in sentence is

warranted—the aggravating factors the Court took into account in its sentencing of

Defendant, including the seriousness of his offense conduct.

## **CONCLUSION**

As set forth above, because Defendant has not shown extraordinary and

compelling circumstances and because any sentence reduction would be

inconsistent with the factors set forth in 18 U.S.C. § 3553(a), Defendant's motion for

compassionate release (Dkt. No. 1120) under 18 U.S.C. § 3582(c)(1)(A) is DENIED.


**IT IS SO ORDERED.**


_\_s/Richard J. Arcara_____
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT


Dated:  April 23, 2026
         Buffalo, New York